IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEHAD ABU ZANT,

Claimant,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

Respondent.

No. 17 C 4520

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Claimant Jehad Abu Zant ("Claimant") seeks review of the final decision of Commissioner of Social Security ("Commissioner"), denying Claimant's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 9.] The parties have filed cross-motions for summary judgment [ECF Nos. 11 and 13] pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 42 U.S.C. §§ 1383(c) and 405(g). For the reasons stated below, Claimant's Motion for Summary Judgment [ECF No. 11] is granted, and the Commissioner's Motion [ECF No. 13] is denied. This matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

# I. PROCEDURAL HISTORY

Claimant filed his claims for DIB and SSI on September 16, 2013, alleging disability beginning July 4, 2012. (R. 15.) The applications were denied initially and upon reconsideration, after which Claimant requested an administrative hearing before an administrative law judge ("ALJ"). (*Id.*) On March 8, 2016, Claimant, represented by counsel, appeared and testified at a hearing before ALJ Michael Pendola. (R. 30–59.) The ALJ also heard testimony from vocational expert ("VE") Diamond Warren. (*Id.*)

On May 12, 2016, the ALJ denied Claimant's claims for DIB and SSI, based on a finding that he was not disabled under the Act. (R. 15–24.) The opinion followed the five-step evaluation process required by Social Security Regulations ("SSR").[2] 20 C.F.R. § 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since July 4, 2012, the alleged onset date. (R. 17.) At step two, the ALJ found that Claimant had the severe impairments of diabetes mellitus, obesity, and osteoarthritis and allied disorders. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404 Subpart P., Appendix 1. (R. 18.) The ALJ then assessed Claimant's residual functional capacity ("RFC")[3] and concluded:

---

[2] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

> [Claimant] has the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except the claimant can only occasionally climb ladders, ropes, scaffolds, ramps and stairs. The claimant can occasionally stoop, kneel, crouch and crawl. The claimant must avoid concentrated exposure to vibration, hazardous machinery or unprotected heights.

(R. 18.) At step four, the ALJ determined that Claimant was capable of performing his past relevant work as a grocery checker and as a truck operator. (R. 22.) Because of this determination, the ALJ found that Claimant was not disabled under the Act. (R. 23.) The Appeals Council declined to review the matter on April 18, 2017, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 42 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the

conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## III. ANALYSIS

On appeal, Claimant alleges that the ALJ improperly assessed his subjective symptom statements and credibility, and failed to support his finding that Claimant could sustain the demands of medium work with substantial evidence. [ECF No. 11, at 9–14.] The Court addresses each of these arguments in turn.

### A. The Credibility Determination

Because an RFC assessment often will "depend heavily on the credibility of [a claimant's] statements concerning the 'intensity, persistence and limiting effects' of [his] symptoms," the Court first addresses Claimant's argument that the ALJ improperly analyzed his statements about his symptoms and his credibility. *See Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p.[4]

---

[4] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their

4

Although an ALJ's credibility determination is entitled to special deference, an ALJ still is required to "build an accurate and logical bridge between the evidence and the result." *Shramrek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000). An ALJ's credibility determination only may be upheld if he gives specific reasons for the determination and provides substantial evidence in support of the determination. *Myles v. Astrue,* 582 F.3d 672, 676 (7th Cir. 2009). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir. 2002).

In this case, the Court finds that the reasons provided by the ALJ for rejecting Claimant's subjective symptom statements are legally insufficient and not supported by substantial evidence, warranting remand on this issue. *See Ghiselli v. Colvin,* 837 F.3d 771, 778–79 (7th Cir. 2016).

The ALJ relied on the lack of objective evidence substantiating Claimant's complaints of knee pain and swelling in his legs to discount Claimant's allegations. (R. 22.) Specifically, the ALJ concluded that "the medical record does not support the severity of the claimant's alleged symptoms." (*Id.*) But an ALJ may not discount a claimant's symptom statements "solely because they are not substantiated by objective evidence." SSR 16-3p, at *5; *see Moore v. Colvin,* 743 F.3d 1118, 1125 (7th Cir. 2014) (finding that "the ALJ erred in rejecting [the claimant's] testimony on the basis that it cannot be objectively verified with any reasonably degree of certainty."). "This is particularly true with allegations of pain." *House v. Berryhill,* 2018 WL 3022678, at *3 (N.D. Ill. June 18, 2018); *see also Hall v. Colvin,* 778 F.3d 688, 691 (7th Cir. 2015) ("The administrative law judge's most serious error, one we've noted in previous cases, is her belief that complaints of pain, to be credible, must be confirmed by diagnostic

---

duty to "assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin,* 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

5

tests.") (citations omitted); *Pierce v. Colvin*, 739 F.3d 1046, 1049–50 (7th Cir. 2014) ("An ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results.").

The ALJ emphasized the "minimal findings" on the x-ray of Claimant's left knee and the fact that Claimant repeatedly denied joint pain at his visits with his primary care physician, Dr. Zehra. (R. 22.) But Claimant testified that he did not talk to Dr. Zehra about his knee problems because he didn't think there was anything Dr. Zehra would be able to do for him. (R. 40–41.) Furthermore, while the x-rays only showed "minimal" developing osteophytes and a "slight" patellar tilt (R. 380), the ALJ gave no indication as to whether he considered how Claimant's extreme obesity might have an effect the symptoms associated with those findings.

Also problematic is the ALJ's failure to explain how Claimant's ability to complete limited daily activities undermines his allegations of pain or equates to an ability to perform full-time work. While it is permissible for an ALJ to consider a claimant's daily activities when assessing a claimant's subjective symptom statements, the Seventh Circuit has repeatedly instructed that ALJs are not to place "undue weight" on those activities. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *see also Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The claimant's] ability to struggle through the activities of daily living does not mean that [the claimant] can manage the requirements of a modern work-place"). Further, when an ALJ does analyze a claimant's daily activities, the analysis "must be done with care." *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

Here, the ALJ concluded that Claimant's daily activities failed to support the severity of his alleged limitations. (R. 22.) The ALJ specifically noted that, despite Claimant's testimony that the pain and swelling in his legs forced him to spend the majority of a typical day lying

down, Claimant was nevertheless able to prepare meals, shop in stores, and do laundry. (*Id.*) But absent from the ALJ's opinion is an explanation as to how Claimant's ability to perform these limited tasks undermines his complaints of debilitating pain. *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("[An ALJ] must explain perceived inconsistencies between a claimant's activities and the medical evidence."); *Ghiselli*, 837 F.3d at 778 (finding error when ALJ did not "identify a basis for his conclusion that the life activities [claimant] reported were inconsistent with the physical impairments she claimed"). Claimant's "admissions" that he can prepare a meal for himself, go to the store, and do laundry are not inconsistent with his complaints of persistent pain.

Likewise, these limited activities do not demonstrate that Claimant can perform full-time work. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.") (collecting cases); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (ALJ failed to consider the difference between a person being able to engage in sporadic physical activities and [his] being able to work eight hours a day five consecutive days of the week).

In sum, the ALJ failed to "build an accurate and logical bridge from the evidence to [his] conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the Court does not hold that the ALJ should have accepted Claimant's allegations completely and without question or analysis, the foundation underlying his assessment was inadequate. On remand, the ALJ shall reassess

Claimant's subjective symptom statements with due regard for the full range of medical evidence, following the requirements of SSR 16-3p.

**B.    The RFC Determination**

Claimant further argues that the ALJ erred in determining Claimant was capable of performing medium-exertion work. [ECF No. 11, 9–11.] Again, the Court agrees with Claimant on this record.

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d 995, 1000 (7th Cir. 2004); *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do de-spite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft*, 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

In assessing Claimant's RFC, the ALJ concluded that Claimant is capable of engaging in medium work, *i.e.*, capable of lifting and carrying 50 pounds occasionally and 25 pounds

8

frequently and capable of standing and/or walking for 6 hours out of an 8-hour workday. (R. 18.) But without the benefit of a detailed analysis by the ALJ of the impact of Claimant's extreme obesity on his ability to perform work activities, it is difficult to accept the conclusion that Claimant—who is 5 feet 11 inches,[5] weighs over 360 pounds,[6] and suffers from arthritis and severe knee pain—is capable of standing and/or walking for 6 hours out of an 8-hour workday on a regular and continuing basis. *See Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004) (stating that "many people who are not grossly obese and do not have arthritic knees find it distinctly uncomfortable to stand for two hours at a time. To suppose that [the plaintiff, who weighed more than 300 pounds and was only 5 feet 1 inch tall] could do so day after day on a factory floor borders on the fantastic.").

While it is true that the ALJ relied on the opinions of the non-examining state agency medical consultants that took into account Claimant's height and weight when assessing his RFC, that does not lead directly to the conclusion that those opinions accounted for the possibility that Claimant's obesity caused additional degradation of his severe conditions, thereby affecting his RFC. Additionally, the mention of Claimant's height and weight in those opinions does not relieve the ALJ of his duty to provide a clear and well-articulated description of the process behind his determination of Claimant's RFC.

In other words, it is not enough for the ALJ to merely acknowledge that "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone," and state that "these considerations have been taken into

---

[5] The consultative examiner recorded Claimant's height at 5 feet, 9 inches (R. 370), however, the medical records from Claimant's treating physician consistently reflect a height of approximately 5 feet, 11 inches. (*See, e.g.*, R. 315, 430, 457, 461.)

[6] At the November 16, 2013, consultative examination, Claimant weighed 362 pounds, with a BMI of 50.5. (R. 370.)

9

account in reaching the conclusions herein." (R. 18.) The ALJ must go further. *See Spicher v. Colvin*, 2015 WL 4714293, at *6 (N.D. Ind. Aug. 7, 2015) ("The ALJ is required to do more than acknowledge the [p]laintiff's obesity. She must also explain how that factored into her analysis."). Here, the ALJ failed to explain how obesity was factored into the RFC analysis besides simply giving weight to the state agency physicians' conclusions.

Using Claimant's weight of 362 pounds and height of 69 inches at the time of his consultative examination, Claimant's BMI is 53.5. Although BMI levels are flexible guidelines and "do not correlate with any specific degree of functional loss," Claimant's resulting BMI calculation suggests that his "extreme" obesity likely has a profound impact on his ability to perform work activities and presents a significant issue that the ALJ should have carefully explored in greater detail in assessing his RFC. SSR 02-01p; *see also Perez v. Astrue*, 2009 WL 3170041, at *8 (C.D. Cal. Sept. 29, 2009); *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40"); *Summers v. Berryhill*, 864 F.3d 523, 527–28 (7th Cir. 2017) (where a claimant's BMI was between 49 and 54, the ALJ appropriately recognized that the "extreme level of [the claimant's] obesity alone would likely result in decreased stamina that would make work at [the medium] level of exertion a challenge"). Moreover, the Seventh Circuit has characterized as laughable the idea that an ALJ can accommodate a claimant's morbid obesity by assigning the kinds of limitations to crawling and crouching that the ALJ assigned here. *Goins v. Colvin*, 764 F.3d 677, 682 (7th Cir. 2014) (expressing doubt that someone with a BMI near 40 could "even occasionally" crawl, stoop, and crouch).

On its face, the ALJ's conclusion that a morbidly obese person who suffers from arthritis could work at a job that requires prolonged standing, let alone the determination that he could

engage in occasional crawling, climbing, stooping, kneeling, and crouching, is a conclusion that "strains credulity." *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016); *Salas v. Colvin*, 2016 WL 7209803, at *7 (N.D. Ill. Dec. 12, 2016). To support such a determination, the ALJ must "build a logical bridge from evidence to conclusion." *Villano*, 556 F.3d at 562. The ALJ failed to do so here, an error necessitating remand.

## IV. CONCLUSION

For the reasons stated above, Claimant's Motion for Summary Judgment [ECF No. 11] is granted, and the Commissioner's Motion [ECF No. 13] is denied. The decision of the Commissioner is reversed, and the matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 11, 2018